UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ELENA KHOTOVITSKAYA *f/k/a* ELENA PANOVA,

                              Plaintiff,

                -against-

ALBERT SHIMUNOV *and* DAVID SHIMUNOV,

                            Defendants.
-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
18 CV 7303 (NGG) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

    On December 2, 2018, plaintiff Elena Khotovitskaya, formerly known as Elena Panova, filed this action against defendants Albert Shimunov and David Shimunov, seeking recovery of $2,000,000 under nine promissory notes issued in her favor by Albert and guaranteed by David Shimunov. When defendant Albert Shimunov failed to file an Answer or otherwise respond to plaintiff's Complaint, plaintiff moved for entry of a default, which was entered by the Clerk of Court on March 4, 2019. A default was then entered against David Shimunov on March 18, 2019 when he failed to file an answer.

    Currently before this Court are defendants' motions to vacate the defaults entered against them, and plaintiff's motion for default judgment and cross-motion for attorneys' fees. For the reasons set forth below, the Court respectfully recommends that defendants' motion to set aside the defaults be granted, that plaintiff's motion for default judgment be denied, and that the plaintiff be granted attorneys' fees upon the filing of appropriate documentation.

1

## FACTUAL BACKGROUND

According to plaintiff, defendant Albert Shimunov executed nine promissory notes in favor of plaintiff between December 2012 and September 2014. (Compl.[1] ¶ 8; Khotoviskaya Decl.[2] ¶¶ 4, 17). Defendant David Shimunov guaranteed each of the promissory notes. (Compl. ¶ 10; Khotovitskaya Decl. ¶ 3). The notes were payable in New York no earlier than December 5, 2015, with an interest rate of 8% per annum. (Compl. ¶ 16; Khotoviskaya Decl. ¶ 20). Plaintiff alleges that in consideration for each of the promissory notes, plaintiff transferred funds totaling $2,000,000 to certain bank accounts designated by defendants. (Compl. ¶¶ 11, 12; Khotovitskaya Decl. ¶¶ 5, 8, 12, 15, 18, 21). Plaintiff claims that contemporaneous with the execution of each promissory note, defendant Albert Shimunov also executed a corresponding promissory note purchase agreement and promissory note acceptance specifying the contractual terms with respect to that particular promissory note, including the 8% interest rate. (See Khotovitskaya Decl. ¶¶ 5, 8, 12, 15, 18).

Plaintiff claims that she made repeated unsuccessful attempts to contact defendants after December 5, 2015 to demand payment on the notes. These attempts culminated on October 4, 2018, when plaintiff's attorney sent a letter to defendants formally demanding payment on plaintiff's behalf. (Compl. ¶ 20; Nossel Decl.[3] ¶ 5, Ex. B). Plaintiff claims that as of the date of the motion to vacate, defendants had failed to repay any portion of the principal amount owed or any of the interest that has accrued on the notes. (Khotovitskaya Decl. ¶ 23).

---

[1] Citations to "Compl." refer to plaintiff's Complaint, filed on December 21, 2018, ECF No. 1.
[2] Citations to "Khotovitskaya Decl." refer to the Declaration of Elena Khotovitskaya, dated June 21, 2019, ECF No. 15-5.
[3] Citations to "Nossel Decl." refer to the Declaration of Deon J. Nossel in Opposition to Motion to Vacate Default, dated October 4, 2019, ECF No. 22-1. Exhibit B thereto is a copy of the October 4, 2018 demand letter, ECF No. 22-3.

2

PROCEDURAL HISTORY

Following the filing of the Complaint on December 1, 2018, plaintiff served the Summons and Complaint upon Albert Shimunov by nail and mail at his residence on January 11, 2019 and January 16, 2019. (See Affidavit of Service, filed on January 22, 2019, ECF No. 5). On February 7, 2019, after Shimunov's time to answer had expired, plaintiff's counsel Deon J. Nossel, Esq., sent an email to Morris Barenbaum, Esq. that included courtesy copies of the summons, complaint, and affidavit of service on Albert Shimunov. (Nossel Decl.[4] ¶¶ 1-2). According to Mr. Nossel, Barenbaum was an attorney who had previously represented Albert and David Shimunov and Mr. Nossel had been in contact with Mr. Barenbaum about this matter prior to commencing the lawsuit. (Id. ¶ 2). In an email chain between Nossel and Barenbaum, Barenbaum informed Nossel that David Shimunov had not been served and that Albert Shimunov had been on vacation when service was allegedly done. (Id., Ex. A[5]). Barenbaum suggested that the Shimunovs be re-served. (Id.) In response, Nossel indicated that Albert Shimunov had been properly served, and asked if they needed more time to respond to the Complaint; otherwise, Nossel indicated that they were inclined to seek a default. (Id.) According to Nossel, he never received a response to the email. (See id. ¶ 2).

On February 25, 2019, plaintiff requested the Clerk to enter a default against Albert Shimunov.[6] On March 4, 2019, the Clerk entered a default against defendant Albert Shimunov.[7]

As for service upon David Shimunov, plaintiff filed the Affidavit of Service on February

---

[4] Citations to "Nossel Decl." refer to the Declaration of Deon J. Nossel in Opposition to Motion to Vacate Default, dated October 4, 2019, ECF No. 22-1.
[5] Citations to "Ex. A" to the Nossel Declaration refer to a copy of an email chain between Nossel and Barenbaum, with all emails dated February 7, 2019, ECF 22-2.
[6] ECF No. 7.
[7] ECF No. 8.

18, 2019, showing that on February 11, 2019, David Shimunov had been served by leaving a copy of the Summons and Complaint at his actual place of business, which is at Mr. Barenbaum's law office.[8] A copy was also mailed to David Shimunov at that location on February 13, 2019. (Id.) On March 12, 2019, when David Shimunov's time to answer had expired, plaintiff requested that a default enter against him.[9] On March 18, 2019, a certificate of default was entered against David Shimunov by the Clerk of Court.[10]

On or about April 2, 2019, defendants each filed letter motions requesting that the Court stay entry of a default judgment and extend their time to answer or otherwise respond to the Complaint. Albert Shimunov's letter stated that he had been out of the country between December 2018 and January 21, 2019 and that he did not see the summons and complaint when he returned. (A. Shimunov Ltr.[11] at 1). He claimed that he had "only recently" been made aware of the lawsuit. (Id.) David Shimunov indicated in his letter that the summons and complaint were received by a receptionist at the Barenbaum law firm,[12] who believed the documents were related to a case being handled by another law firm. (D. Shimunov Ltr.[13] at 1). The receptionist apparently sent the papers to that other law firm, and, according to David Shimunov, he "only recently" learned of the instant lawsuit. (Id.)

When Albert and David Shimunov filed their April 2, 2019 letter motions requesting more time to respond, they each stated that they discussed an extension of time with Mr. Sasson

---

[8] ECF No. 6.
[9] ECF No. 9.
[10] ECF No. 10.
[11] Citations to "A. Shimunov Ltr." refer to Albert Shimunov's letter motion for extension of time to file answer, dated April 2, 2019, ECF No. 13.
[12] At the time of service, David Shimunov worked at the Barenbaum law firm. (ECF No. 6).
[13] Citations to "D. Shimunov Ltr." refer to David Shimunov's letter motion for extension of time to file answer, dated April 2, 2019, ECF No. 12.

4

from Sasson Law PLLC and that Mr. Sasson had "'no objection.'" (D. Shimunov Ltr. at 1; A. Shimunov Ltr. at 1). Plaintiff disputes the accuracy of these representations, and informed the Court on April 5, 2019 that Mr. Sasson never agreed to an extension of time. (Pl.'s 4/5/19 Ltr.[14] at 1). According to Mr. Nossel, he was on the telephone during the conversation between David Shimunov and Nossel's colleague, Moshe Sasson, Esq., and Nossel represents that during that conversation, the Shimunovs never requested and Sasson never consented to an extension of time. (Nossel Decl. ¶ 4).

On June 26, 2019, plaintiff filed motion for default judgment. (Default Mot.[15]). Copies of the motion papers were mailed to defendants on June 28, 2019.[16] (ECF No. 16). Defendants took no immediate action in response to the application for default judgment. On August 20, 2019, the Court issued an Order directing defendants to file an appropriate motion to vacate the default on or before September 6, 2019. (8/20/19 Order[17]). The Order stated that if no such motion were filed, the Court would order an inquest on damages. (Id. at 2). Thereafter, on September 5, 2019, attorney Lawrence H. Silverman filed a notice of appearance and requested an extension of time to file the motion to vacate, which this Court granted. On September 20, 2019, defendants filed the instant motion to vacate the default. (Mot. to Vacate[18]).

---

[14] Citations to "Pl.'s 4/5/19 Ltr." refer to plaintiff's response in opposition to defendants' letter motions for extension of time to file answer, dated April 5, 2019, ECF No. 14.

[15] Citations to "Default Mot." refer to plaintiff's motion for default judgment, filed June 26, 2019, ECF No. 15.

[16] See Certificate of Service, ECF No 16.

[17] ECF No. 17.

[18] ECF No. 20.

5

## DISCUSSION

A. <u>Personal Jurisdiction/Service of Process</u>

   1. <u>Standards</u>

Personal jurisdiction is a necessary prerequisite to entry of a default judgment. If a defendant does not receive service in compliance with Rule 4 of the Federal Rules of Civil Procedure and does not waive formal service, the court lacks personal jurisdiction over the defendant. See <u>Martin v. New York State Dep't of Mental Hygiene</u>, 588 F.2d 371, 373 (2d Cir. 1978); see also <u>Michaelson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 709 F. Supp. 1279, 1282 (S.D.N.Y. 1989) (stating that proper service on a defendant of a summons and complaint is a prerequisite to personal jurisdiction).

Rule 4 of the Federal Rules of Civil Procedure prescribes the manner in which service of process must be effected in order to subject a defendant to the court's jurisdiction. See Fed. R. Civ. P. 4. Thus, it is well established that failure to adequately prove proper service of court documents under Rule 4 bars the entry of a default judgment. See, e.g., <u>Orellana v. World Courier, Inc.</u>, No. 09 CV 576, 2010 WL 3861002, at *2 (E.D.N.Y. Aug. 24, 2010) (denying motion for default judgment against a defendant for whom plaintiff had not adequately proved service); <u>Cowder v. Admin. for Children & Families</u>, No. 09 CV 628, 2010 WL 723440, at *2 (E.D.N.Y. Mar. 1, 2010) (denying motion for default judgment where service had not been properly effected); <u>Llaviganay v. Cipriani 110 LLC</u>, No. 09 CV 737, 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009) (noting that inadequate proof of service bars entry of default judgment). Here, the defendants have not indicated any intention to waive service; thus, the issue is whether all necessary documents have been served in compliance with the requirements of Rule 4.

Under the Federal Rules of Civil Procedure, a natural person may be served by "following state law for serving a summons . . . in the state where the district court is located" or by "leaving a copy of the [pleadings] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(1), (e)(2)(B). Rule 4 also provides that service may be affected by "following state law . . . [of] the state where the district court is located." Fed. R. Civ. P. 4(e)(1). New York provides for service upon an individual by delivering the summons and complaint to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode. . ." to be followed by mailing a copy to the individual's "last known residence." N.Y. C.P.L.R. § 308. Thus, in this case, service under Rule 4 may also be deemed proper if plaintiff has complied with New York law.

The technical requirements of Rule 4 notwithstanding, courts have recognized that the fundamental purpose of service is to give defendants notice of the claims against them; due process requires that service be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." DPWN Holdings (USA), Inc. v. United Air Lines, 871 F. Supp. 2d 143, 154 (E.D.N.Y. 2012) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). At its core, this standard is one of reasonableness. Id. Thus, courts will deem valid efforts to serve outside the bounds of Rule 4 where a defendant has "actual notice" of the documents mailed. See, e.g., Burda Media, Inc. v. Blumenberg, No. 97 CV 7167, 2004 WL 1110419, at *6-*7 (S.D.N.Y. May 18, 2004).

2. Analysis of Service Issues

David Shimunov has submitted an Affidavit in support of his motion to vacate, claiming that "some time in February 2019," he learned from Mr. Barenbaum that there was a lawsuit pending against Shimunov, but he claims that "at no point was I served." (D. Shimunov Aff.[19] ¶ 2). Shimunov claims that Mr. Barenbaum informed plaintiff's counsel that service had never been effected on David Shimunov and that plaintiff would need to re-serve. (Id. ¶ 2). Shimunov claims that he waited to receive service but did not receive anything. (Id. ¶¶ 2, 3). After over a month of waiting, his assistant, Tatiana Davidoff, checked Pacer and noticed the entry of default. (Id. ¶ 3).

Shimunov then contacted the City Bar Justice Center, who told him to file a motion for an extension of time, which he filed on April 2, 2019. (Id. ¶¶ 4-5). He then telephoned the Chambers of the undersigned on April 29, 2019, at which time he was told that no decision had been made on his letter motion and that he should wait before filing an Answer. (Id. ¶ 6). At the end of June, after checking Pacer, Shimunov discovered that the plaintiff had filed a motion for default judgment, and at that point he decided to retain counsel. (Id. ¶ 8). He claims that he had no intention to cause a delay in this matter and only through investigation learned that a relatively new employee, Olena Gnatiuk, misfiled the paperwork. (Id. ¶ 12).

In support of the motion to vacate the default, defendants have provided the affidavit of Tatiana Davidoff, who states that she has been working with David Shimunov since June 2013. (Davidoff Aff.[20] ¶ 1). According to her Affidavit, she and Shimunov learned from Morris

---

[19] Citations to "D. Shimunov Aff." refer to the Affidavit of David Shimunov, dated November 15, 2019, ECF No. 25.

[20] Citations to "Davidoff Aff." refer to the Affidavit of Tatiana Davidoff, dated November 15, 2019, ECF No. 26.

Barenabaum in February 2019 that there was a lawsuit pending against Shimunov. (Id. ¶ 2). She states that at the end of March, she checked her Pacer account and saw that a default had been entered against David Shimunov, and she informed him of that fact immediately. (Id. ¶ 4). She further states that she assisted him in preparing a letter motion which he filed on April 2, 2019. (Id. ¶ 5). At the end of June 2019, she noticed that plaintiff had filed a motion for default judgment; she then emailed documents pertaining to the lawsuit to attorney Matthew Myers for his review on July 8, 2019. (Id. ¶¶ 7, 8). According to Ms. Davidoff, Shimunov ultimately executed a retainer agreement with his current counsel, Lawrence Silverman. (See id. ¶ 9). Davidoff claims that it was later discovered that a relatively new employee of Mr. Barenbaum, Olena Gnatiuk, had previously assumed that "this paperwork" was part of a different automobile accident claim and filed the paperwork in that accident file.[21] (Id. ¶ 10).

Olena Gnatiuk has also submitted an Affidavit, in which she states that she moved to the United States from Ukraine in May 2018, and since July 2018, she has worked as a part time employee at the Barenbaum law office located at 1100 Coney Island Avenue, Brooklyn, N.Y. (Gnatiuk Aff.[22] ¶¶ 1, 2). She claims that until recently, her duties consisted of opening the mail, filing and making copies. (Id. ¶ 3). She claims that some time in early 2019, someone brought papers with David and Albert Shimunov's names on them, which she assumed was part of their car accident claim from 2016, and she filed the papers in that file. (Id. ¶¶ 4). She forwarded an original to the attorney that handles that case. (Id. ¶ 5).

As a preliminary matter, the Court, having reviewed the affidavits of service, respectfully

---

[21] It is unclear what paperwork Davidoff is referring to, but the Court assumes that she is referencing the service papers.
[22] Citations to "Gnatiuk Aff." refer to the Affidavit of Olena Gnatiuk, dated November 15, 2019, ECF N. 27.

9

recommends a finding that service upon both David and Albert Shuimonv was proper. Plaintiff demonstrated proof of service in accordance with the Federal Rules and with N.Y. C.P.L.R. § 308. Although defendants claim not to have received actual notice of the lawsuit until plaintiff sent courtesy copies of the summons and complaint to Mr. Barenbaum's law office, defendants do not contest that service was effected. (See Defs.' Mem.[23]). Thus, this Court has personal jurisdiction over both defendants.

B. <u>Defendants' Motion to Vacate the Default</u>

Defendants argue that the default should be set aside, because the default was not willful, the defendants have a meritorious defense, and vacating the default will not prejudice the plaintiff. (Defs.' Mem. at 6.)

1. <u>Rule 55(a) Standards</u>

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Rule 55 sets forth a two-step process for an entry of default judgment. See <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See <u>id.</u> Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment. See Fed. R. Civ. P. 55(b).

Rule 60(b) of the Federal Rules of Civil Procedure sets forth the bases on which a court may vacate or amend a previously entered judgment or order:

---

[23] Citations to "Defs.' Mem." refer to defendants' Memorandum of Law to Vacate the Default (corrected), filed September 21, 2019, ECF No. 21.

10

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . .; (3) fraud . . ., misrepresentation, or other misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged . . .; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Decisions to vacate an entry of default are within the discretion of the court, and any doubts should be resolved in favor of a trial on the merits." Brown v. Gabbidon, No. 06 CV 8148, 2007 WL 1423788, at *2 (S.D.N.Y. May 14, 2007) (citing Meehan v. Snow, 652 F.2d at 276-77); see also In re Emergency Beacon Corp., 666 F.2d 754, 760 (2d Cir. 1981); Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984). Although courts have held that the Rule should be liberally construed so as to do "substantial justice," see MIF Realty L.P. v. Rochester Assocs., 92 F.3d 752, 755 (8th Cir. 1996); Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401 (5th Cir. 1981), the Rule provides for extraordinary relief and may be invoked only upon a showing of exceptional circumstances. See Rinieri v. News Syndicate Co., 385 F.2d 818, 822 (2d Cir. 1967); see also Ben Sager Chems. Int'l, Inc. v. E. Targosz & Co., 560 F.2d 805, 809 (7th Cir. 1977); Hoffman v. Celebrezze, 405 F.2d 833, 835 (8th Cir. 1969).

It is well-established that "[a] motion to vacate a default is subject to a less rigorous standard than applies to a Rule 60(b) motion to vacate a default judgment." American Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d 57, 59 (2d Cir. 1996) (citing Meehan v. Snow, 652 F.2d at 276); see also Enron Oil Corp. v. Diakuhara, 10 F.3d at 96 (noting that although the same factors are applied in determining whether to vacate a default or default judgment, "courts apply the factors more rigorously in the case of a default judgment . . . because the concepts of finality and litigation repose are more deeply implicated in the latter action") (internal citation omitted). Under this standard, the court should consider: (1) whether the defendant's default was willful;

11

(2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. Id. (citations omitted). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." Id. (citing Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320 (2d Cir. 1986)).

2. The Parties' Arguments

Turning to the defendants' motion to set aside the default, plaintiff argues that defendants' default was willful, as they had actual notice of this action no later than February 7, 2019, based on plaintiff's email to Barenbaum, and yet they took no action to defend in this action until filing their letters in April 2019. (Pl.'s Mem.[24] at 9). Plaintiff also disputes defendants' accounting of events and accuses defendants of deliberately engaging in dilatory tactics. (Id. at 10-11). As to the merits of the case, plaintiff states that defendants have no defense to plaintiff's breach of contract claim due to, *inter alia*, the parole evidence rule and defendants' lack of a coherent argument against plaintiff's claims. (Id. at 11-21). Finally, plaintiff argues that vacatur of the default would prejudice her, as defendants state that their business is failing and so "there is reasonable basis to believe that Plaintiff's ability to recover in full from Defendants would be impaired by the delay in reaching final judgment." (Id. at 21).

a) Meritorious Defense

Defendants argue that they have a meritorious defense to plaintiff's claims, in that there are legitimate questions as to the nature of the business transactions, and whether plaintiff was, in fact, an investor in Allhealth Medical Clinic ("Allhealth")[25] whose payments to the Shimunovs

---

[24] Citations to "Pl.'s Mem." refer to plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Vacate Default, ECF No. 22-8.
[25] Allhealth Medical Clinic is the medical clinic business at issue between the parties,

12

were made in exchange for the ownership of a percentage of the business. (Id.) In support of their defenses, defendants have submitted the statements of various witnesses to the transactions leading to this dispute.

Defendants have provided the Affidavit of Inga Iudina, sworn to in Thessaloniki, Greece on September 18, 2019. According to Ms. Iudina, in 2012, she introduced the defendants, who are friends of Iudina, to plaintiff Elena Panova and her husband, Yuriy Kholovitskiy for them to invest $2 million towards the purchase of a 40% interest in Allhealth. (Iudina Aff.[26] at 2). Iudina was to receive a percentage of the investment. (Id.) The plaintiff and her husband came to the United States to meet the Shimunovs, entered into a purchase agreement, and started to transfer funds pursuant to the agreement to invest. (Id.) She claims that it "was never to be a simple loan agreement" but was so that plaintiff's son, who was studying to become a doctor, would eventually serve the Russian community in Brooklyn. (Id.)

Tatiana Davidoff also submitted an Affidavit in support of the defendants, dated September 19, 2019, in which she states that she attended two meetings with David Shimunov, plaintiff Elena Panova, and her husband Yuriy Khotovitskiy in 2013 and 2014. (Davidoff Sept. Aff.[27] ¶ 2). According to Ms. Davidoff, the meeting in 2013 was attended by David Shimunov and plaintiff at which they reviewed the Profit and Loss statements for Allhealth, including the expenses of the clinic and the investments that needed to be made. (Id.) She claims that they also discussed "ownership percentages" and the percentage for Inga Iudina, who brokered the deal. (Id.) During the second meeting, held sometime in 2014, Ms. Davidoff claims that

---

discussed further infra at 13 et seq.
[26] Citations to "Iudina Aff." refer to the Affidavit, Number 12.800, filed on September 20, 2019, ECF 20-4.
[27] Citations to "Davidoff Sept. Aff." refer to the Affidavit of Tatiana Davidoff, dated September 9, 2019, ECF No. 20-2.

13

plaintiff, her husband, and David Shimunov were present and discussed Allhealth's profits and losses. (Id.) She claims that despite plaintiff's claim that these were promissory notes, in fact plaintiff was investing in the purchase and development of a clinic and that plaintiff's son, Stanislav Panov, was studying to be a doctor and would eventually become a part owner of the clinic. (Id. ¶¶ 3-4). She claims that, pursuant to her responsibility to manage David Shimunov's business and personal matters, she was not aware of the $2,000,000 advance being anything other than an investment loan. (Id. ¶ 5).

Plaintiff, on the other hand, claims that she was not considering an investment in Allhealth, but rather was simply lending the defendants money. (See Pl.'s Mem. at 3-4). Plaintiff has submitted the Declaration of Sergey Barykin, who worked as a vice president at Bank Saint Petersburg PJSC (the "Bank") in 2012. (Barykin Decl.[28]). According to Mr. Barykin, plaintiff, a client of the Bank, asked for assistance from the Bank in late November 2012 to arrange a loan to Mr. Shimunov in New York. (Id. ¶ 2). The Bank suggested that she transfer the funds by purchasing a promissory note issued by him personally and secured by a guarantor. (Id. ¶ 3). She relies on this statement to support her claim that the promissory note was to guarantee a loan to the defendants.

Based on the competing declarations and affidavits submitted by both sides, it appears that there are clearly disputed issues of fact, resolution of which would affect the outcome of the litigation. Given the preference for resolving claims on their merits, this factor weighs heavily in the Court's determination as to the motion to vacate the default.

---

[28] Citations to "Barykin Decl." refer to the Declaration of Sergey Barykin, dated October 3, 2019, ECF No. 22-7.

14

b) Willfulness and Prejudice

Apart from arguing the merits of the case, defendants contend that their default was not willful and vacating the default to allow them to pursue their defenses on the merits will not prejudice the plaintiff. (Defs.' Mem. at 6). Defendants argue that the fact that immediately after the default was entered, defendants filed letters with the court and hired counsel shows that they were not acting in bad faith or deliberately trying to default. (Id. (citing American Alliance Ins. Co. v. Eagle Ins. Co., 92 F.3d at 60-61 (holding that a showing of bad faith, or egregious or deliberate conduct, is necessary for finding "willfulness" on the part of a defaulted defendant)).

Finally, with respect to any prejudice to plaintiff as a result of the two-month delay between the email relating to service on February 7, 2019 and the *pro se* letters to this Court on April 2, 2019, defendants argue that the loans allegedly went into default in September 2015. (Id. at 7). Nevertheless, plaintiff waited almost three and a half years to bring this action. Thus, defendants claim that plaintiff's past "lack of urgency" to pursue her rights "is explained by her expectation that her investments would [become] profitable and only after it became obvious to her, after reviewing the business records that the business was failing did she bring the law suit based on the notes." (Id. at 7.) As such, defendants argue that the comparatively minor two-month delay here would not prejudice plaintiff. (Id.)

Considering the evidence before the Court in light of the three-factor standard for vacating a default (see Enron Oil Corp. v. Diakuhara, 10 F.3d at 96), the Court respectfully recommends that the default be vacated. Resolving any doubts about defendants' claims in their favor, see Brown v. Gabbidon, 2007 WL 1423788, at *2, the Court takes the Shimunovs' claims about their awareness of the lawsuit at face value. Although the Court does not understand why the Shimunovs did not take action immediately upon learning from Barenbaum of the lawsuit in

15

February 2019,[29] the Court does not find their delay to be so willful as to warrant a default judgment. Once the defendants discovered the default on Pacer, the Shimunovs, then proceeding *pro se*, contacted the Court within fifteen days to inquire as to their ability to file an answer. In these circumstances, where *pro se* defendants make an effort to contact the Court shortly after the default was entered, it would be unduly harsh to maintain the default. See Sony Corp. v. Elm State Elecs., Inc., 800 F.2d 317, 320 (2d Cir. 1986)).

In addition, given the amount of money at stake – over two million dollars – and that the facts underlying the business transaction are vigorously disputed between plaintiff and defendants, the Court believes that the issues are best resolved on the merits. As such, the Court respectfully recommends that the District Court vacate the default.

C. Cross Motion for Attorneys' Fees

In the event the Court grants defendants' motion to vacate the default, plaintiff moves for attorneys' fees incurred in obtaining the default, applying for a default judgment, and litigating the motion to vacate the default. (Pl.'s Mem. at 22). Plaintiff argues that "the Court has discretion to condition a grant of Defendants' motion to vacate on an award of fees so as to avoid undue prejudice to Plaintiff." (Id. (citing Powerserve Int'l, Inc. v. Lavi, 239 F.3d 508, 515 (2d Cir. 2001))).

In Powerserve, the Second Circuit held that district courts have the "inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing

---

[29] It may be that Albert Shimunov, in reliance on Barenbaum's response to plaintiff's counsel that Albert needed to be re-served because he had been out of the country, was waiting for new service. Similarly, at the time of the February 7 email, it is clear that David Shimunov had not been served, as the affidavit of service indicates that he was not actually served until February 11, 2019. (See ECF No. 6). In addition, David Shimunov's default was certified on March 18, 2019, less than a month prior to his April 2, 2019 letter. The record therefore indicates that both defendants acted fairly quickly to file their letters with the Court.

party." Powerserve Int'l, Inc. v. Lavi, 239 F.3d at 515. Courts may impose fees, bonds, or other conditions to rectify any prejudice suffered by the non-defaulting party as a result of the default and subsequent reopening of the litigation, even where the court finds that the default was not willful. Id. at 515-16; Pall Corp. v. Entegris, Inc., 249 F.R.D. 48, 52 (E.D.N.Y. 2008). Other courts in this circuit have imposed attorney's fees upon the defaulting party when vacating a non-willful default. See Pennacchio v. Powers, No. 05 CV 985, 2010 WL 3767141, at *6 (E.D.N.Y. Aug. 9, 2010), report and recommendation adopted, No. 05 CV 985, 2010 WL 3744052 (E.D.N.Y. Sept. 20, 2010), RLS Assocs., LLC. v. United Bank of Kuwait PLC., No. 01 CV 1290, 2002 WL 122927, at *8 (S.D.N.Y. Jan. 29, 2002); Corso v. First Frontier Holdings, Inc., 205 F.R.D. 420, 421 (S.D.N.Y. 2001).

Although the Court does not believe defendants' default in this case was willful, the Court believes that plaintiff should not suffer the costs of defendants' negligence. The Court thus respectfully recommends that the District Court permit plaintiff to seek reimbursement of her attorneys' fees and costs that were incurred from the date of David Shimunov's default through the date of this Report and Recommendation and that are attributable to defendants' negligent conduct. If this Recommendation is adopted, the Court further recommends that the District Court require plaintiff to supplement her request for attorneys' fees by submitting all appropriate documentation necessary to support a fee award.

## CONCLUSION

For the reasons given above, the Court respectfully recommends that the motion for default judgment be denied, the motion to set aside the default be granted, and that the District Court permit plaintiff to seek attorneys' fees.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); see also Fed. R. Civ. P. 6(a), (e) (providing the method for computing time). Failure to file objections within the specified time waives the right to appeal the District Court's order. See, e.g., Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008) (explaining that "failure to object timely to a . . . report [and recommendation] operates as a waiver of any further judicial review of the magistrate [judge's] decision").

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
March 10, 2020

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York