UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ELENA KHOTOVITSKAYA f/k/a ELENA
PANOVA,

                              Plaintiff,

        -against-

ALBERT SHIMUNOV and DAVID SHIMUNOV,

                              Defendants.

**MEMORANDUM & ORDER**

**18-CV-7303 (NGG) (TAM)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Elena Khotovitskaya, formerly known as Elena Panova
("Plaintiff"), brings this breach of contract action against Defend-
ants Albert and David Shimunov (collectively, "Defendants")
relating to payments incurred for Defendants' purported failure
to pay the principal and interest due under certain promissory
notes and guaranties, as well as costs related to travel in this mat-
ter. Currently before the court is Plaintiff's fully briefed motion
for summary judgment made pursuant to Federal Rule of Civil
Procedure 56. (*See* Not. of Mot. (Dkt. 70); Mem. in Supp. of Mot.
("Mot.") (Dkt. 70-20); Defs.' Opp. to Mot. ("Opp.") (Dkt. 71-9);
Reply (Dkt. 72).) For the reasons explained below, Plaintiff's mo-
tion is GRANTED as to liability.

## I.   BACKGROUND[1]

Between December 5, 2012 and September 5, 2014, Defendants
Albert and David Shimunov executed and delivered nine prom-
issory notes with guaranties in the principal amount of

---

[1] The facts noted within this order are drawn largely from the parties' com-
peting Local Rule 56.1 statements and their supporting exhibits. (*See* Pl.'s
56.1 St. (Dkt. 70-3); Defs.' 56.1 Counter St. (Dkt. 71-8).) The court will
credit the Defendants' version of a particular fact if it is supported by evi-
dence in the record. *June v. Town of Westfield*, 370 F.3d 255, 257 (2d

$2,000,000.00. (Pl.'s 56.1 St. ¶ 1.)[2] Copies of each promissory note, including the corresponding purchase agreement, guaranty, and acceptance act, have been submitted to the court. (*See* Declaration of Elena Khotovitskaya ("Khotovitskaya Decl.") (Dkt. 70-1), Exs. C-K (the "Notes") (Dkts. 70-6 through 70-14).) All of the Notes were signed by Defendant Albert Shimunov, guaranteed by Defendant David Shimunov, and then notarized. (Pl.'s 56.1 St. ¶¶ 2-11; Defs.' 56.1 Counter St. ¶¶ 2-11.)[3] The parties dispute that these are legitimate promissory notes however, with

---

Cir. 2004) (construing "the evidence in the light most favorable to the non-moving party and . . . draw[ing] all reasonable inferences in its favor") (quoting *World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co.,* 345 F.3d 154, 165-66 (2d Cir. 2003)).

[2] Defendants argue that the principal amount totals $1,850,000. (Defs.' 56.1 Counter St. ¶ 1; *see also* Declaration of David Shimunov ("David S. Decl.") (Dkt. 71-5) ¶ 13 (citing Ex. A to David S. Decl. ("Defs.' Timeline") (Dkt. 71-6)).) However, upon review of the timeline submitted with the David S. Decl., the court finds that the Investment Amounts listed in the third column total $2,050,000 as alleged by Plaintiff and shown in Defendants' exhibit. (Defs.' Timeline.) The court therefore credits the Plaintiff's version of this fact for purposes of establishing the principal amount owed. Separately, the court clarifies the timeline as it understands it. Pursuant to the promissory notes, listed as "Exhibits," each note is dated ("Date of Document"), and includes the amount to be transferred ("Investment Amount"). The next column represents the date money was actually transferred from Plaintiff to the Defendants ("Date Invested"). The final column represents the amount actually transferred ("Amount Invested"), which totals $2,000,000. (*Id.*) Because Defendants' exhibits show that $2,000,000 was transferred, the court adopts this amount for purposes of this summary judgment motion.

[3] Contrary to Plaintiff's 56.1 Statement, the court notes that the first promissory note was signed by Albert Shimunov (not David) and the related guaranty was signed by David Shimunov (not Albert). (*See* Ex. C to Khotovitskaya Decl. (Dkt. 70-6); *cf.* Pl.'s 56.1 St. ¶ 2.) The court also acknowledges that Defendants (1) dispute each of the nine promissory notes, arguing that they are investments rather than loans, and (2) assert that the notarization of the Notes is immaterial given their claim that the transactions were investments. (Defs.' 56.1 Counter St. ¶¶ 2-11.)

Defendants contending that they were fraudulently induced into signing the Notes and instead believed that the underlying transaction was as an investment. (*See* Defs.' 56.1 Counter St. ¶¶ 1-10.) Plaintiff, on the other hand, submits that the money she gave to Defendants was not an investment for which no reimbursement was required, but indeed a loan as evidenced by the nine signed promissory notes and guaranties. (*See* Pl.'s 56.1 St. ¶¶ 1-10.)[4]

Each of the promissory notes' purchase agreements contained identical provisions, with the only substantive differences being the principal sums. (*See* Notes.)[5] Pursuant to the note purchase agreements, the maturity date of all of the Notes was listed as December 5, 2015, with an interest rate at 8% per annum. (Notes ¶ 1(b).) Each of the purchase agreements also included several clauses. Of relevance, the note purchase agreements contained a merger clause, providing that the "Agreement, together with the form of the Promissory Note attached hereto, constitutes the full and entire understanding and agreement between the parties with regard to the subjects hereof and thereof." (*Id.* ¶ 4(c).)

Pursuant to the purported Notes, Plaintiff caused the transfer of the principal amount to Defendants, who received a total of $2,000,000.00. (Pl.'s 56.1 St. ¶ 17.)[6] On October 4, 2018, Plaintiff sent a demand letter to Defendants for payments due under

---

[4] Plaintiff also contends that Defendants do not deny the existence of the nine Notes, nor that they signed the Notes, but Defendants assert this fact is immaterial in light of their deposition testimony explaining that the underlying transaction was an investment. (Pl.'s 56.1 St. ¶ 12; Defs.' 56.1 Counter St. ¶ 12.)

[5] Because each note's terms are identical, citations to "Notes" are to each of the nine promissory notes.

[6] Defendants dispute that Plaintiff transferred the principal amount in accordance with the Notes and cite to David Shimunov's Declaration and

the Notes. (Ex. L to Khotovitskaya Decl. ("Demand Letter") (Dkt. 70-15).) To date, Defendants have failed to repay any portion of the principal or interest on the Notes, and as such, Plaintiff contends that both Defendants have defaulted on each of the Notes and guaranties. (Pl.'s 56.1 St. ¶ 20.) Plaintiff submits that the outstanding interest owed on each note through December 5, 2023 (the date of her motion) totals $2,767,762.67. (*Id.* ¶¶ 21-22.) Defendants contend the money was an investment and dispute the default and amount owed. (Defs.' 56.1 Counter St. ¶¶ 18, 20-22.)

Additionally, in a Stipulation dated February 23, 2023, counsel for both parties agreed that Defendants would pay travel and related costs for the Plaintiff to attend a second deposition. (Ex. M to Khotovitskaya Decl. ("Dep. Stipulation") (Dkt. 70-16).) On June 26, 2023, Plaintiff's counsel informed the Defendants that the cost for the second day of deposition totaled $2,948 and on July 17, 2023, defense counsel acknowledged receipt of the invoices and the amount due. (Ex. O to Khotovitskaya Decl. ("Pl. Dep. Email") (Dkt. 70-18); Ex. P to Khotovitskaya Decl. ("Defs.' Dep. Email Response") (Dkt. 70-19).) As of the date of Plaintiff's motion, she contends the travel amount remains due and owing. (Pl.'s 56.1 St. ¶ 27.)

---

Exhibit A. (Defs.' 56.1 Counter St. ¶ 17 (citing David S. Decl.; Defs.' Timeline.) As discussed, however, Defendants' Exhibit A shows a total of $2,000,000 was transferred to the Defendants. (Defs.' Timeline.)

Plaintiff also asserts, and Defendants dispute, that the $50,000 difference between the total amount received by Defendants and the amount due under the Notes is the result of additional out of pocket expenses in connection with the international wire transfers, currency conversions, and other transaction costs that she contends Defendants agreed to repay. (Pl.'s 56.1 St. ¶ 18.) Because Plaintiff has failed to provide evidence beyond her own declaration that an additional $50,000 was also transferred to the Defendants, the court credits the Defendants' position that this fact is in dispute. (Defs.' 56.1 Counter St. ¶ 18.)

## II. LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant bears the burden of establishing that there are no material facts that preclude judgment as a matter of law. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004).

Once the movant has met its initial burden, the party opposing summary judgment "must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Am. Empire Surplus Lines Ins. Co. v. Certain Underwriters at Lloyd's London*, No. 16-CV-5664 (AMD) (JO), 2018 WL 10456838, at *4 (E.D.N.Y. July 23, 2018).[7] "An issue of fact is material for these purposes if it might affect the outcome of the suit under the governing law." *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 97 (2d Cir. 2000). A "genuine" issue of fact is one where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id.* A genuine issue of fact cannot be established by "[c]onclusory allegations, conjecture, and speculation." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998).

All evidence is construed in the light most favorable to the non-moving party, with all "reasonable inferences" drawn in their favor. *ING Bank N.V. v. M/V Temara, IMO No. 9333929*, 892 F.3d 511, 518 (2d Cir. 2018).

---

[7] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

## III. DISCUSSION

### A.  Whether Plaintiff's Declaration is Admissible

Defendants argue that summary judgment is improper in this case because Plaintiff, who is a non-English speaker, submitted her declaration in Russian with a certified translation in English, but the translation was not signed by the author rendering it inadmissible as a matter of law. (Opp. at 6.) Specifically, Defendants take issue with Plaintiff's certified translation because it was certified by a third-party, in this case Maryna Pavlyk, the Project Manager of the translation service ISG Translation World, who did not certify her own Russian proficiency. (Opp. at 6-7.) Rather, Defendants note that the true author of the translation, Mr. Aleksey Lyashev, should have been the one to certify the translation or in the least, Ms. Pavlyk should have certified her own competency in the Russian language. (*Id.*)

"It is a well-established rule that a document in a foreign language is generally inadmissible unless accompanied by a certified English translation." *Heredia v. Americare*, Inc., No. 17-CV-06219 (RWL), 2020 WL 3961618, at *5 (S.D.N.Y. July 13, 2020).

After Defendants filed their brief in opposition to summary judgment, Plaintiff cured the previously defective translation certification by submitting a supplemental declaration in which a new translator both translates Plaintiff's declaration from Russian to English and certifies to the same. (*See* Ex. Q to Reply ("Certified Declaration") (Dkt. 72-2)); *see also Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007) (allowing a certification of translation for a declaration to be admissible). The court finds Plaintiff's declaration therefore admissible.[8]

---

[8] The Defendants also noted that it was "curious" that the Russian version of Plaintiff's declaration contains 21 numbered paragraphs whereas the

## B. The *Prima Facie* Case

"To establish a prima facie case for the recovery of a breach of contract to pay a promissory note, the plaintiff simply must show proof of the note and the defendant's failure to pay by its maturity date." *HICA Educ. Loan Corp. v. Yunatanov*, No. 11-CV-488 (SJ), 2013 WL 3288452, at *2 (E.D.N.Y. June 28, 2013). Specifically, the plaintiff must show that "(1) the defendant signed the promissory note; (2) the party seeking enforcement is the present holder or owner of the note; and (3) that the note is in default." *Id.* Accordingly, "[a]ctions for recovery on a promissory note are appropriately decided by motion for summary judgment because a promissory note stands on its own and establishes the plaintiff's right to payment." *Crotona 1967 Corp. v. Vidu Bros. Corp.*, 925 F. Supp. 2d 298, 307 (E.D.N.Y. 2013). Once a *prima facie* case is made, the burden then shifts to the defendant to prove the existence of a defense against the note creating a triable issue of fact. *Id.*

The burden for establishing a *prima facie* case for breach of guaranty is similar. "[I]n an action against a guarantor, a plaintiff must show: (1) the existence of the guaranty; (2) the underlying debt; and (3) the guarantor's failure to perform under the guaranty." *UMB Bank, N.A. v. Bluestone Coke, LLC*, No. 20-CV-2043 (LJL), 2020 WL 6712307, at *4 (S.D.N.Y. Nov. 16, 2020). "The burden then shifts to the defendant to raise a triable issue of fact in the form of a bona fide defense against the note." *Id.; see also*

---

English version contains 22 numbered paragraphs. (Opp. at 7.) However, Plaintiff's certification of the translation is sufficient to clarify what appears to be a formatting error. As paragraphs 21 and 22 in the English version begin the same way, "To date, Defendants have failed to repay any portion . . . [,]" it appears that the Russian version may contain 21 numbered paragraphs because what would have been paragraph 21 is inadvertently included in paragraph 20. (*Compare* Certified Declaration at ECF 8 with *id.* at ECF 14-15.) The court therefore finds that the Russian version is proper and sufficient to render it admissible.

*Cimontubo-Tubagens E Soldadura, LDA v. Petróleos De Venezuela, S.A.*, No. 20-CV-5382 (GBD), 2021 WL 827133, at *5 (S.D.N.Y. Mar. 4, 2021), *aff'd*, No. 21-875-CV, 2022 WL 2155285 (2d Cir. June 15, 2022).

Here, the *prima facie* case is met as to the Notes. Defendant Albert Shimunov does not dispute the existence of the nine promissory notes nor the fact that he signed the Notes. (Pl.'s 56.1 St. ¶¶ 11-12; Defs.' 56.1 Counter St. ¶¶ 11-12.) There is also evidence that Plaintiff is the holder of the Notes as she is listed as the Purchaser on each of the nine Notes. (*See* Notes.) And finally, Plaintiff has sufficiently put forth evidence demonstrating that Defendant Albert Shimunov defaulted on each of the Notes by failing to meet his payment obligations. (*See* Demand Letter.)

As to the related guaranties, Defendants argue that the guaranties are too vague to create any obligations on the part of Defendant David Shimunov. (*See* Opp. at 10.) Effectively, this argument implies a dispute as to whether the guaranties are distinct from the promissory notes to warrant a separate analysis for purposes of Plaintiff's *prima facie* case. Further, it appears the parties apply different laws with respect to the consideration of the guaranties. (*Compare id.* at 10-11, *with* Reply at 9-10.)

It is well established that Article 3 of the Uniform Commercial Code ("UCC") applies to negotiable instruments, such as promissory notes, but generally does not apply to guaranties. *See 656 Hermitage Circle, LLC v. Wallach*, No. 22-CV-571 (LGS), 2023 WL 2118072, at *3 (S.D.N.Y. Feb. 17, 2023).[9] However, when the

---

[9] To qualify as a negotiable instrument under the UCC, a document must: "(a) be signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer." *Windward Bora, LLC v. Weiss*, No. 20-CV-3668 (FB) (JAM), 2024 WL 630499, at *9 (E.D.N.Y. Feb. 15,

guaranty is "annexed to, and made part of, the promissory note, . . . the entire document is to be considered a negotiable instrument and the provisions of U.C.C. Article 3 apply with full force." *Port Distrib. Corp. v. Pflaumer*, 880 F. Supp. 204, 209 (S.D.N.Y.), *aff'd*, 70 F.3d 8 (2d Cir. 1995). That is precisely the case here. Included on each promissory note is a guaranty "for aval"[10] or "collateral security," and issued to Defendant David Shimunov. (*See* Notes at ECF 6.) There is also a signature line for the "Guarantor" with David Shimunov's endorsement and date. (*Id.*) This is sufficient to render the entire document a negotiable instrument subject to the UCC.

Similar to the Notes, there is evidence that the guarantor, David Shimunov, failed to meet his payment obligations under the guaranties after Albert Shimunov defaulted on the Notes. (*See* Demand Letter.) Accordingly, Plaintiff has established a *prima facie* case for the failure to pay the promissory notes issued by Albert Shimunov and guaranteed by David Shimunov.

The court must therefore turn to the Defendants' defenses to enforcement of the Notes.

### C.   Defendants' Defenses to Enforcement of the Notes

Defendants contend that summary judgment should be denied because there are material issues of fact regarding the underlying transaction. Specifically, the Defendants raise affirmative defenses as to whether the underlying transaction was an investment because Defendants were fraudulently induced into

---

2024); *see also* UCC § 3-104(1). Here, the promissory notes are considered negotiable instruments because they are promises to pay a certain sum of money at a definite time, signed by Defendants and payable to the Plaintiff. UCC § 3-104(1)(d).

[10] The French word *aval* is a commercial term meaning "backing" or "endorsement." *See A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 78 (2d Cir. 1993).

signing the Notes and incorporated guaranties.[11] (*See* Opp. at 7.) Plaintiff argues that because the Notes contain a merger clause, extrinsic evidence and representations between the parties suggesting that the transaction was an investment rather than a loan must be precluded. (*See* Mot. at 9-11.) The court will first address whether the merger clause precludes a claim for fraud and then turn to the claim itself.

1. Merger Clause

The existence of a "general" merger clause typically is insufficient to exclude parol evidence presented to show fraud in the inducement. *Fierro v. Gallucci*, No. 06-CV-5189 (JFB), 2008 WL 2039545, at *13 (E.D.N.Y. May 12, 2008). The Second Circuit has defined a general merger clause in a contract as "an omnibus statement that the written instrument embodies the whole agreement, or that no representations have been made[.]" *Manufacturers Hanover Tr. Co. v. Yanakas*, 7 F.3d 310, 315 (2d Cir. 1993) (quoting *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320 (N.Y. 1959)). This is distinct from a negotiated merger clause where there have been "extended negotiations between sophisticated business people . . . hammered out [in] a multimillion dollar personal guarantee proclaimed by defendants to be absolute and unconditional." *Citibank, N.A. v. Plapinger*, 66 N.Y.2d 90, 95 (N.Y. 1985). A general merger clause is also distinct from an explicit disclaimer that concerns the same subject matter as the alleged oral representation. *See Danann Realty*

---

[11] Defendants raise an affirmative defense regarding the statute of limitations in their Answer that is not raised in their Opposition to Summary Judgment and will therefore not be considered here. (*See* Defs.' Answer (Dkt. 38) ¶ 5); *see also Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 310 (S.D.N.Y. 2010) (finding that the non-moving party abandoned the affirmative defenses that it had not briefed in its opposition).

*Corp.*, 5 N.Y.2d at 320 (noting that plaintiff stipulated to a specific disclaimer that it was "not relying on any representations as to the very matter as to which it now claims it was defrauded.").

Upon review of the evidence, the court cannot determine as a matter of law that the merger clause was one that was negotiated. (*See* Declaration of Albert Shimunov ("Albert S. Decl.") (Dkt. 71-4) ¶¶ 6-8 ("At no point did I intend to sign any loans documents, nor did I discuss signing any loan documents . . . and I did not read any of [the loan documents] prior to signing"); David S. Decl. ¶¶ 10-13 ("At no time did [David Shimunov and Plaintiff] discuss anything other than Plaintiff investing into Allhealth, let alone signing loan documents or documents that Plaintiff claims are guarantees.") Nor does it appear from the promissory note purchase agreement that there was a specific provision disclaiming the existence of or reliance upon specified representations that are now at issue, *i.e.*, that the promissory notes were mere formalities for the transfer of funds from Russia to U.S. banks for an investment. (*See, e.g.*, Opp. at 5; Albert S. Decl. ¶¶ 6-8; David S. Decl. ¶¶ 10-13.) While the agreement does detail certain limited representations of the Purchaser (Plaintiff) and Seller (Defendant Albert Shimunov), nowhere in the agreement does it expressly state that these are the only representations and warranties for which the parties are to rely. (*See* Notes ¶ 2 ("This Agreement is . . . a valid and binding obligation for the Seller . . . being enforceable against the Seller in accordance with its respective terms."); *id.* (noting that the representations and warranties of the seller contained in the agreement are "true and correct" but failing to note if they are absolute or exclusive). *Cf. Danann Realty Corp.*, 5 N.Y.2d at 320-23 (dismissing fraud claim where plaintiff alleged false statements regarding operating expenses because contract contained specific disclaimer of prior representations concerning expenses and operations); *Plapinger,* 66 N.Y.2d at 95 (precluding fraud

claim because of negotiated merger clause and additional language that the guarantee was "irrespective of" any other agreement or circumstance which "might otherwise constitute a defense"); *see also Yanakas*, 7 F.3d at 317 (collecting cases and noting that where the fraud claim was dismissed, the disclaimer was "sufficiently specific to match the alleged fraud").

The court therefore finds that Defendants are not precluded from asserting their defenses based on fraud.

### 2. Fraudulent Inducement

To establish a valid defense of fraudulent inducement under New York law, the Defendants must establish: "(1) a misrepresentation of an existing material fact; (2) made with knowledge of its falsity; and (3) with an intent to defraud; (4) that induces reasonable reliance; and (5) damages the defendant." *Camofi Master LDC v. Coll. P'ship, Inc.*, 452 F. Supp. 2d 462, 474 (S.D.N.Y. 2006). At the summary judgment stage, the party seeking to establish fraud must prove each element by clear and convincing evidence. *See Hernandez v. Money Source Inc.*, No. 17-CV-6919 (GRB), 2021 WL 1402257, at *9 (E.D.N.Y. Mar. 5, 2021). "New York law defines clear and convincing evidence to be a fact that is shown to be highly probable." *Id.*

Defendants contend that summary judgment must be denied because there are material questions of fact that exist with respect to whether the underlying transaction was a loan or investment. Defendants point to their own declarations and deposition testimony purporting to show that all parties understood that Plaintiff's transaction was an investment into the medical center AllHealth, which was owned by Defendant Albert Shimuov. (*See generally* Albert S. Decl.; David S. Decl.; *see also* Ex. A to Declaration of Eduard Kushmakov in Opp. to Plaintiff's Mot. ("Kushmakov Decl.") (Dkt. 71-1) ("Albert S. Dep.") at 25:6-26:9; 28:12-29:17; Ex. B to Kushmakov Decl. (71-2) ("David S. Dep.") at 104:12-105:7.) According to the Defendants, they were under

the impression that in return for the $2,050,000 invested into AllHealth, Plaintiff would have a 40% interest in AllHealth which would then be transferred to Plaintiff's son following completion of medical school, and upon obtaining his medical license and U.S. citizenship. (*Id.*)[12] Defendants also point to the affidavit of non-party Inga Iudina to corroborate the alleged misstatements made by Plaintiff. (*See* Ex. B to David S. Decl. (Dkt. 71-7) ("Iudina Aff.").)[13] Igna Iudina, while a non-party, is allegedly a friend of Plaintiff and her husband. (*See* Opp. at 8; Albert S. Dep. at 53:17-54:14; David S. Dep. at 73:20-23.) Ms. Iudina submits that in 2012, she introduced the Defendants to Plaintiff and her husband for them to "invest $2 million towards the purchase of an interest in a medical clinic[,] Allhealth Medical Clinic[,] as 40% partners." (Iudina Aff. ¶ 1.) She submits that as a finder of the opportunity, Ms. Iudina was to receive an equity stake in the medical clinic. (*Id.*) She stated that Plaintiff came to the United States to meet the Defendants and they subsequently entered into a "purchase agreement to invest." (*Id.* ¶ 2.) Ms. Iudina noted that this was not a "simple loan agreement" and corroborated the Defendants' understanding that in exchange for the money, Plaintiff's son was to "ultimately serve the Russian community in

---

[12] David Shimunov testified that Plaintiff's "main goal was to have her son a citizenship [sic] here, and for him to become a doctor. Which I helped him, I guess, achieve both." (*Id.* at 106:17-20.) It is unclear from the filings what role, if any, the Defendants had in Plaintiff's son citizenship.

[13] Plaintiff asserts that Ms. Iudina's affidavit should not be considered credible by the court because she conceded in her affidavit that her testimony is based upon limited knowledge and belief, and she referred to a nonexistent purchase agreement. (*See* Reply at 9 n.3.) The court disagrees. First, Ms. Iudina testified "[t]o [her] knowledge," the existence of a purchase agreement to invest. (Iudina Aff. ¶¶ 2-3.) She did not specify whether that agreement was in writing. Further, Ms. Iudina described the contents of the promissory notes at issue, "believe[ing] them to refer to the "existence of an 'Agreement'" for which the Plaintiff is now suing. (*Id.* ¶¶ 5-6.) Absent a few misspellings upon translation, there is nothing about the affidavit that is confusing or so lacking in credibility to render it inadmissible.

Brooklyn at the clinic" upon becoming a licensed physician in the United States. (*Id.* ¶ 3.) She further testified that there "was never a discussion of a straight loan although the plaintiff asked that certain papers in the form of promisory [sic] notes be signed as security." While Ms. Iudina's affidavit does not explain why the promissory notes were signed, it nevertheless corroborates the Defendants' testimony. Construing the facts in the light most favorable to Defendants, a jury could find that Plaintiff made a representation that the promissory notes were mere formalities so that her Russian bank would allow the transfer of funds, and that this statement was both material and a misrepresentation of the purchase agreement for each of the Notes. (*See* David S. Dep. at 111:3-15; *see also* Notes.)

Defendants must also show that the Plaintiff knew that the representation was false. *Woo v. Times Enter., Inc.*, No. 98-CV-9171 (SAS), 2000 WL 297114, at *5 (S.D.N.Y. Mar. 22, 2000). Here, Defendants have alleged by clear and convincing evidence that Plaintiff knew her representation regarding the release of funds was false. Defendant David Shimunov testified that he received an email that Plaintiff forwarded from her bank explaining that the Notes "have to be signed in order for them to proceed with the transfers of the money." (*See* David S. Dep. at 164:22-165:8.) While unclear if Defendants read the bank's email (as opposed to Plaintiff's email), the Defendants have nevertheless alleged that they were under the impression that the parties agreed to invest $2,000,000 into AllHealth in exchange for an equity stake. Crediting Defendants' understanding, it is therefore clear that Plaintiff knew that the forwarded Notes did not represent the terms of the parties' agreement regarding AllHealth. It may be true that Plaintiff believed that the Defendants needed to sign the Notes so that her bank could release the funds, but she also knew that by signing the Notes, the parties were agreeing to terms that had not been discussed. This representation was therefore false.

Despite this false misrepresentation, Defendants have failed to show by clear and convincing evidence that Plaintiff had an intent to defraud them. An "[i]ntent to defraud can be generally shown by evidence of guilty knowledge or willful ignorance." *M & T Mortg. Corp. v. White*, 736 F. Supp. 2d 538, 565 (E.D.N.Y. 2010). "Courts routinely allow parties to rely on circumstantial evidence and legitimate inferences therefrom to meet this burden, as there is usually not direct evidence of fraudulent intent." *Rojas v. Cigna Health & Life Ins. Co.*, No. 14-CV-6368 (KMK), 2018 WL 4759775, at *9 (S.D.N.Y. Sept. 29, 2018).

Here, the presence of circumstantial evidence does raise questions of fact as to whether Plaintiff had the requisite intent. Defendants point out that, at least in some instances, Plaintiff transferred money to the Defendants prior to the execution of the Notes thus raising doubt as to the validity of the promissory notes as true loans. (*See* Defs.' Timeline; *see also* Notes.) To the Defendants, this purports to show that that the promissory notes were simply a formality for release of the funds rather than loans that must be paid back pursuant to the loan agreements. Even construing the evidence in the light most favorable to the Defendants, no reasonable jury could conclude that Plaintiff had an intent to defraud the Defendants when there is evidence of Plaintiff's partial performance in the form of the underlying transaction. *See Camofi Master LDC*, 452 F. Supp. 2d at 476 (finding partial performance under the contract undermines a finding that third-party defendant had any "preconceived and undisclosed intention" not to perform).

Defendants must additionally demonstrate that they relied on misrepresentations by Plaintiff and that such reliance was both justifiable and reasonable. *M & T Mortg. Corp*, 736 F. Supp. 2d at 567. The heart of the issue here is that both Defendants failed to read the agreements that they were signing because to them, they were assured the documents were just forms to sign for the

bank. Generally, "[a] party who signs a document without any valid excuse for not having read it is conclusively bound by its terms." *Stortini v. Pollis*, 31 N.Y.S.3d 90, 90 (2d Dep't 2016). Plaintiff argues that because there is no documentary evidence purporting to show a transfer of interest in exchange for the payment, Defendants claims must be ignored in light of the signed Notes and guaranties. (Reply at 9.) On the other hand, Defendants testimony suggests that there were no forms or documentation showing Plaintiff's interest because the understanding was that upon Plaintiff's son becoming licensed in the United States, interest would be transferred to him. Plaintiff was simply the holder of that interest in the meantime. (*See* David S. Dep. at 104:12-105:7.) Further, upon transfer of the funds, Plaintiff apparently disappeared; Defendants attempted to call and email Plaintiff to execute the transfer of interest and follow up on her son's obligations but to no avail—until the demand letter and subsequent lawsuit almost three years later. (*Id.* at 88:18-89:19; 92:5-17; 98:4-99:5.) Despite these arguments by the defense, Defendants nevertheless signed the promissory notes and guaranties. They provide no reason why they could not review the promissory notes with a lawyer prior to signing, nor do they assert that Plaintiff prevented or discouraged them from seeking counsel. *Cf. Phillips v. Better Homes Depot, Inc.*, No. 02-CV-1168 (ERK), 2003 WL 25867736, at *15-16 (E.D.N.Y. Nov. 12, 2003) (noting that where parties are "steered" to a lawyer or sophisticated party with which the seller had a relationship, and convinced to sign papers without reading them, reliance is reasonable). While Defendants may have relied on Plaintiff's misrepresentation, they have failed to show that such reliance was reasonable. Finally, it is unclear what, if any, damage was done to the Defendants by Plaintiff's misrepresentation given that they received $2 million under their purported agreement.

As no jury could reasonably find that the Defendants were fraudulently induced by Plaintiff to execute the Notes, Plaintiff's motion for summary judgment must be GRANTED.

## D.  Damages

Under New York law, "[a] party injured by breach of contract is entitled to be placed in the position it would have occupied had the contract been fulfilled according to its terms." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 500 F.3d 171, 185 (2d Cir. 2007).

To calculate damages in this case, the court first considers Plaintiff's request seeking an award of $2,948.00 in costs related to Plaintiff's travel to attend a second deposition in this matter. (Mot. at 6.) Defendants have failed to address this claim, and Plaintiff has sufficiently put forth evidence showing the amount is outstanding. (*See, e.g.,* Dep. Stipulation; Pl. Dep. Email; Defs.' Dep. Email Response.) Plaintiff is therefore entitled to recovery on the $2,948.00 in costs for attending the deposition.

Plaintiff contends that summary judgment should be granted in the total amount of $4,820,710.67, consisting of $2,050,000.00 in unpaid principal on the Notes and $2,767,762.67 in unpaid interest on the Notes through December 5, 2023. However, the evidence before the court only shows that $2,000,000 was transferred to the Defendants. (*See* Defs.' Timeline; Ex. C to Kushmakov Decl. (Dkt. 71-3) ("Danske Bank Payments").) While Plaintiff contends that an additional $50,000 should be awarded due to out-of-pocket expenses in connection with international wire transfers, currency conversions, and other transaction costs that Defendants agreed to repay, there is no documentation confirming this amount was paid or stipulated to. The court therefore awards a principal amount of $2,000,000 to Plaintiff and finds that the parties must recalculate interest on this new amount.

Plaintiff also seeks an award of pre-judgment interest as of December 6, 2023, through the date of judgment, plus legal fees, costs, and disbursements. But as noted, the court awards a different principal amount than requested, so any pre-judgment interest on must also be recalculated in light of the new principal amount.

Because the court nevertheless finds that Plaintiff is entitled to summary judgment with respect to liability, the court DIRECTS the parties to submit a proposed judgment pursuant to the findings in this Order within 30 days. Should the parties disagree on the calculation of unpaid interest or pre-judgment interest, each side shall submit an affidavit with supporting documentation setting forth its calculations of interest.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment is GRANTED as to liability. The parties are DIRECTED to submit a proposed judgment notice within 30 days from the date of this Order. Alternatively, each side shall submit an affidavit detailing its calculations of interest within 30 days.

SO ORDERED.

Dated:     Brooklyn, New York
           March 18, 2024

                                        s/NICHOLAS G. GARAUFIS
                                        NICHOLAS G. GARAUFIS
                                        United States District Judge